George Thomas QUISENBERRY,
Appellant,

v.

The STATE of Texas, Appellee.

No. 10–01–066–CR.

Court of Appeals of Texas,
Waco.

Aug. 21, 2002.

Rehearing Overruled Sept. 18, 2002.

Daniel W. Hurley, Aaron Ray Clements, Hurley, Reyes & Guinn, Lubbock, for appellant.

Bill R. Turner, Brazos County Dist. Atty., Margaret Lalk, Brazos County Asst. Dist. Atty., Bryan, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

George Thomas Quisenberry appeals the trial court's order revoking his community supervision for failing to pay restitution. He raises two issues for our review, and finding that the court abused its discretion in deciding to revoke, we will reverse the judgment.

### BACKGROUND

In 1988, Quisenberry was self-employed as a cattle broker purchasing livestock from ranchers and then selling them at auction barns expecting to realize a profit from the sale. Linda and Wayne Wilson own a small cattle ranch in Brazos County. Within a two to three week period, Quisenberry bought approximately $118,000 worth of cattle from the Wilsons, paying by check. He sold the cattle to third parties at auction barns in Floydada, Texas, before the Wilsons learned that the

checks had been returned for insufficient funds. In all, Quisenberry made three separate purchases of cattle from the Wilsons using checks that "bounced."

In May 1990, Quisenberry pled guilty to a three-count indictment charging felony theft by check. TEX. PEN.CODE ANN. §§ 31.03, 31.06 (Vernon Supp.2002). The trial court sentenced him to ten years' confinement, but suspended imposition of that punishment and placed Quisenberry on community supervision for ten years.[1] A condition of community supervision was to pay restitution in the amount of $118,660.32. He was required to make a $20,000 payment by November 8, 1991, and a final payment of the remaining balance by May 8, 1993.[2]

On May 29, 1990, at the State's request, the trial court modified the three orders setting the conditions to reflect the amount of restitution to be paid in each count: count 1), $34,317.04; count 2), $42,538.36; and count 3), $41,804.92. The court ordered Quisenberry to pay the entire amount of restitution in two payments of approximately $59,000 each, the first payment due November 1991 and the second to be paid in May 1993. The payment terms were modified again in June of 1993 because, according to the assistant district attorney, this payment schedule "became impossible." After a hearing on the issue of how to structure the payments, the court modified the conditions of community supervision in each count. The revision ordered Quisenberry to make monthly payments "between the first and tenth of the month," beginning in July of 1993, in the amounts of $400 for count 1, $532 for count 2, and $523 for count 3, a total of $1,455 per month.

Almost seven years later, in May 2000, the Brazos County District Attorney's office filed motions to revoke Quisenberry's community supervision on the ground that he had failed to make the required monthly payments. Quisenberry pled "not true" to the allegation and asserted the affirmative defense of inability to pay. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 21(c) (Vernon Supp.2002) ("In a community supervision revocation hearing at which it is alleged only that the defendant violated the conditions of community supervision by failing to pay ... restitution, or reparations, the inability of the defendant to pay as ordered by the judge is an affirmative defense to revocation, which the defendant must prove by a preponderance of evidence.").

After a hearing on October 20, 2000, which was continued on December 19, the trial court found the allegations to be true, revoked community supervision on each count, and announced his intention to impose "shock" probation so that the probationary period could be extended for another ten years. *Id.* art. 42.12 § 6(a). Quisenberry then brought this appeal. His first issue is that the trial court did not have jurisdiction because the capias or warrant was not issued before the expiration date of his probationary period. His second issue is that the trial court abused its discretion by revoking community supervision when the evidence shows that he did not have the ability to pay.

---

1. The court entered three separate judgments and signed three almost-identical orders setting the conditions of probation.

2. The reason for this payment schedule was that Quisenberry had filed a lawsuit against a stock broker who had allegedly stolen over $100,000 from him. He brought the suit in Illinois and won a judgment. The broker filed for bankruptcy, however, and Quisenberry's judgment yielded only pennies on the dollar.

## ISSUE (1): LACK OF JURISDICTION

■ Quisenberry first contends the trial court lacked jurisdiction to revoke his community supervision. Quisenberry and the State agree that a trial court's jurisdiction extends beyond the probationary period when: (1) the State's motion to revoke is properly filed before the expiration of the probationary period; and (2) a capias is issued before the expiration of the probationary period. *Brecheisen v. State,* 4 S.W.3d 761, 763 (Tex.Crim.App.1999); *Beaty v. State,* 49 S.W.3d 606, 607 (Tex. App.-Beaumont 2001, pet. ref'd).

Quisenberry's probationary period expired on May 8, 2000. The State filed motions to revoke his probation on May 2. A capias was issued on May 5 for each count. Quisenberry was arrested on May 11. Each capias was issued before the expiration of his probationary period. Therefore, the two jurisdictional-extending prerequisites were satisfied before the expiration date of his probationary term. *Rodriguez v. State,* 804 S.W.2d 516, 517 (Tex.Crim.App.1991). Accordingly, the trial court had jurisdiction over the revocation proceedings; we overrule issue one. *Id.*

## ISSUE (2): INABILITY–TO–PAY DEFENSE

### STANDARD OF REVIEW

■ We review an order revoking community supervision by determining whether the court abused its discretion. *Cardona v. State,* 665 S.W.2d 492, 493 (Tex.Crim.App.1984). If the State fails to meet its burden of proof, the trial court abuses its discretion in issuing a revocation order. *Greathouse v. State,* 33 S.W.3d 455, 458 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). Here, the State moved to revoke Quisenberry's community supervision on the ground that he failed to pay restitution as ordered. When evidence that the probationer is unable to pay fees, court costs, fines, or restitution is not refuted by the State and the trial court revokes probation, it is an abuse of discretion. *Id.* at 459 (citing *Basaldua v. State,* 558 S.W.2d 2, 7 (Tex.Crim.App.1977), and *Pool v. State,* 471 S.W.2d 863, 863 (Tex. Crim.App.1971)).

### APPLICABLE LAW

■ A trial court has broad discretion in imposing conditions of community supervision. The conditions, however, must be reasonable, and must be designed to "protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." TEX.CODE CRIM. PROC. ANN. art. 42.12 § 11(a) (Vernon Supp.2002); *Speth v. State,* 6 S.W.3d 530, 533 (Tex.Crim.App.1999). If restitution is ordered, the restitution amount set must be just. *See Martin v. State,* 874 S.W.2d 674, 676 (Tex.Crim.App.1994). The trial court must "consider the ability of the defendant to make the payments" in ordering restitution. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 11(b) (Vernon Supp.2002).

■ Once granted, community supervision should not be arbitrarily withdrawn by the trial court; the court is not authorized to revoke community supervision absent a showing that the probationer has violated a condition imposed by the court. *DeGay v. State,* 741 S.W.2d 445, 449 (Tex. Crim.App.1987). In a revocation proceeding, the State must prove the allegations of the motion to revoke by a preponderance of the evidence. *Jenkins v. State,* 740 S.W.2d 435, 437 (Tex.Crim.App.1987). As noted, failure to pay restitution due to the inability to pay is an affirmative defense for a defendant to raise and prove by a preponderance of the evidence. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 21(c); *Maxey v. State,* 49 S.W.3d 582, 584 (Tex.App.-

Waco 2001, pet. ref'd) (citing *Stanfield v. State*, 718 S.W.2d 734, 737 (Tex.Crim.App. 1986)). Once the issue of inability to pay is raised, the burden of proof shifts to the State to prove that the defendant's failure to pay was intentional. *Stanfield*, 718 S.W.2d at 738; *Stafford v. State*, 63 S.W.3d 502, 508 (Tex.App.-Texarkana 2001, pet. ref'd). The Code of Criminal Procedure provides that when the ground for revocation is failure to pay restitution as required, the trial court "shall consider" these factors when deciding whether to revoke:

(1) the defendant's employment status;

(2) the defendant's earning ability;

(3) the defendant's financial resources;

(4) the willfulness of the defendant's failure to pay; and

(5) any other special circumstances that may affect the defendant's ability to pay.

TEX.CODE CRIM. PROC. ANN. art. 42.037(h) (Vernon Supp.2002).

### APPLICATION

*The State's Case–in–Chief*

■ Brad Scott, a Brazos County community supervision officer, was the State's only witness at the revocation hearing. Scott reviewed the history of the restitution orders. According to Scott, in 1993 the court ordered Quisenberry to pay $1,455 a month so that restitution to the Wilsons could be paid in full in the seven years remaining on his community supervision period.

Scott testified that Quisenberry had paid $12,125 in restitution to the Wilsons during his ten-year probationary period. He said Quisenberry had never made a full payment of $1,455. In addition, he said that Quisenberry stopped making payments altogether in June 1999. According to Scott, Quisenberry was notified of delinquencies in his payments through "request re-sponse" letters, which were form letters that were sent to the out-of-county community supervision officer who was monitoring Quisenberry, to let that officer know of the delinquency. Scott stated that Quisenberry would respond to these letters by making a less-than-full payment and "apologizing for being late, saying he would make-up and pay more." A "payment record" was admitted into evidence, showing the amounts and dates of Quisenberry's payments as applied to the restitution due on each count.

Scott testified that Quisenberry came under his supervision as part of his "indirect case load" when he went to work at the Community Supervision Department in August of 1996. He said that, although they never had a personal meeting, Quisenberry would send in a "budget sheet" from time to time "explaining what his finances were and about what was going on." He acknowledged that Quisenberry had been ordered to pay restitution in several other counties and that the total ordered in all counties was $321,889.22.

The evidence is uncontroverted that Quisenberry did not pay restitution as ordered by the court; thus, the State established by a preponderance of the evidence the grounds it asserted in its motions to revoke his community supervision. *Jenkins*, 740 S.W.2d at 437.

*The Affirmative Defense: Inability to Pay*

■ As stated earlier, Quisenberry had the burden to prove by a preponderance of the evidence his inability to pay restitution as ordered. *Stanfield*, 718 S.W.2d at 737; TEX.CODE CRIM. PROC. ANN. art. 42.12 § 21(c). Quisenberry testified that his wife Sharon's income as city secretary of Floydada had helped meet his restitution obligations. In 1998, however, she died suddenly. Her death occurred at a time when his business began to have "bad" years. Quisenberry's son Monty has been

an "insulin dependent diabetic" since he was a small child and requires costly insulin treatment every month. When Monty no longer enjoyed health insurance coverage through his deceased mother's employer, which helped defray the expense of his treatments, Quisenberry bore the responsibility of paying $400 a month for his son's medical care until he finished college. Regarding his trucking business, Quisenberry said he had four to five "bad" years because while hauling rates (income) stayed the same, his fuel, insurance, and maintenance expenses "doubled." He testified that he worked thirty hours a week at the sale barn in Floydada and at his cattle hauling business seven days a week. He said, "I've tried to pay all I could."

Quisenberry's Certified Public Accountant (C.P.A.), Norman Allen, testified that Quisenberry's "adjusted gross income" for the years 1990 through 1999 totaled $151,446. A summary of the annual figures for the years 1990 through 1999 was admitted into evidence. Allen further testified, and the exhibit shows, that after deducting the $81,717 in restitution that Quisenberry had actually paid to all the counties, $69,729 remained from the total "adjusted gross income." He said that, over the ten-year period, this was an average monthly amount of $591 left for living expenses, which is less than the Internal Revenue Service would allow a taxpayer for reasonable and necessary living expenses when trying to work out a schedule for payment of back taxes.

Tax returns for the years 1990, 1992, and 1994–96 for George and Sharon Quisenberry and 1997–99 for George Quisenberry were offered into evidence by the State.[3] They show annual gross incomes as follows:

1990 – $23,407

1992 – $24,760
1994 – $32,607
1995 – $37,021
1996 – $ 4,419
1997 – $ 7,134
1998 – $22,015
1999 — ($39,035)

Allen, noting that the earlier returns included Sharon's income, said that five of the returns show that Quisenberry's business lost money. Allen admitted on cross-examination, however, that "cash flow" rather than "taxable income" is the test for ability to pay. He said that over a ten-year period, which he analyzed, "all the depreciation and all the principal payments will basically even out. So that a ten-year period will be a very accurate analysis of cash flow for that entire period. But if you take any one year by itself, it can be a bit deceiving."

From the same hometown as Quisenberry, Allen had known him since boyhood and had been his C.P.A. for fifteen years. He testified: "I think George has done a remarkable job with keeping his lifestyle simple, and he spent less on [himself] and his family than he has on restitution over the last ten years."

Based on the testimony and documents, the evidence shows the following:

- The trial court ordered Quisenberry to pay $118,660.32 in restitution in 1990;
- Courts in other counties ordered him to pay restitution totaling $203,228.80;
- He paid $12,125 in Brazos County, leaving an unpaid balance of $106,535.32;
- Quisenberry never made a full restitution payment of $1,455 in any month from the date of the 1993 order until his term of community supervision ended; with one exception, he never

3. Reporter's Record, Vol. 1, page 38.

made a full payment in any month on any of the three counts;

- Quisenberry and his wife earned $151,446 in adjusted gross income for the period 1990 through 1999;
- $81,717 of that amount was paid to various counties for restitution during that period;
- Of the $151,446 in adjusted gross income, Quisenberry's wife Sharon earned more than $100,000 from her employment with the City of Floydada during the years 1990 through 1996;
- Quisenberry paid more restitution than the "adjusted gross income" he earned during his period of community supervision;
- Although "cash flow" is a better measure of ability to pay restitution than "taxable income," over a ten-year period taxable income will approximate cash flow;
- Quisenberry did not have an extravagant lifestyle.

An initial question arises as to whether, when restitution is ordered in installments, a defendant must prove his inability to pay each and every unpaid installment. Or, is evidence of his inability to pay the total or even annual amount ordered sufficient to carry his burden?

The State alleged in each motion the monthly and total amount ordered to be paid on that count and that Quisenberry had failed to pay that monthly amount between the first and tenth of the month during each month from July of 1993 through December of 1999. The uncontroverted evidence is that no payment was for the full amount of the three combined orders.[4] The record of payments shows that the payments were applied to count 1,

count 2, or count 3 randomly; nevertheless, only one payment of $500—applied to count 1—was for the full amount of restitution ordered on that count, $400.

Quisenberry's evidence did not address his ability to pay on a monthly basis; rather, he attempted to show that the total amount he was ordered to pay exceeded his ability to pay over the seven year period. Nevertheless, we conclude that Quisenberry proved by a preponderance of the evidence, *i.e.*, "the greater weight of credible testimony," that he never had the ability to pay any of the $1,455 monthly restitution payments ordered in 1993. *Stanfield*, 718 S.W.2d at 737; *see also Allen v. State*, 841 S.W.2d 7, 11 (Tex.Crim. App.1992) (By definition "preponderance of the evidence" means "the greater weight of credible testimony."); *Jimerson v. State*, 957 S.W.2d 875, 878 (Tex.App.-Texarkana 1997, no pet.) (citing *Allen*).

*Proof that Quisenberry's Failure to Pay Was Intentional*

As we have stated, once the defendant proves his inability to pay, the burden of proof shifts to the State to prove the defendant's failure to pay was intentional. *Stanfield*, 718 S.W.2d at 738; *Stafford*, 63 S.W.3d at 508. Having concluded that Quisenberry demonstrated his inability to pay, we now review the evidence to determine whether the State met that burden of proof.

The State offered no direct evidence on the issue of intentional failure to pay. Through cross-examination, the State tried to get Quisenberry and Allen to acknowledge that he could have done more than simply pursue his failing trucking business. The evidence shows that Quisenberry spent $25 per month on country-club

---

**4.** We cannot ascertain from the record why the court initially entered three community supervision orders on a single indictment.

dues during the earlier years and that he assisted his son Monty with college tuition.[5]

### Did the Trial Court Abuse Its Discretion?

In a revocation case, the San Antonio Court of Appeals rejected the State's argument that the probationer should have owned a used car instead of a newer model and bought cheaper clothes in order to pay more in restitution. *Amezcua v. State,* 975 S.W.2d 688, 691 n. 1 (Tex.App.-San Antonio 1998, no pet.). The court concluded that to require a probationer to "forgo transportation and personal grooming and yet still get a job that would enable her to make a substantial monthly payment" is a "test" which the court was not prepared to require of probationers to avoid revocation. *Id.* We reject a similar State's argument.

The State argued to the trial court that Quisenberry should have abandoned or sold his trucking business and worked at a "salaried" job to make the $1,455 restitution-payment. The State also implied in cross-examination of Quisenberry that his second wife of three months should be using her income to pay restitution, or that she should sell her separate-property home to pay Quisenberry's restitution. But we will not, as the San Antonio court says, put Quisenberry to such a "test." In fact, as already noted, the State produced no evidence that Quisenberry had any unused income or unjustified expenses that would have allowed him a realistic opportunity to make the $1,455 monthly payments.

5. A second son, Chad, was also assisted, but Allen testified that Sharon furnished these funds.

6. Quisenberry received some money when his first wife died unexpectedly. He received $20,000 in life insurance proceeds, $8,000 of which was spent on funeral expenses. He was the beneficiary of a retirement plan with

Accordingly, based on our analysis of the evidence and the case-authorities, we find an abuse of discretion in revoking Quisenberry's probation after he proved that he never had the ability to pay the court-ordered $1,455 a month and the State did not discharge its burden to show that his failure was intentional. *Greathouse,* 33 S.W.3d at 459.

### The Statutory Factors

 We also examine the trial court's decision in light of article 42.037(h) of the Code of Criminal Procedure. The article provides factors for a trial judge to consider when faced with a motion to revoke community supervision for failure to pay restitution. TEX.CODE CRIM. PROC. ANN. art. 42.037(h). Applying them to the facts of this case we find:

(1) the defendant's employment status: Quisenberry was self-employed throughout the probationary period, buying and selling cattle and operating his trucking business; he also worked part-time for Floydada Livestock Exchange;

(2) the defendant's earning ability: Allen testified that the trucking business could generate $2,000 to $2,500 per month in revenue for Quisenberry, and he grossed $150 to $225 per week at his part-time job;

(3) the defendant's financial resources:

- Quisenberry testified that he could not borrow money from a bank, relatives, or friends;[6]
- his bank account was overdrawn at the time of trial; and
- he has no assets to liquidate;

her employer. The retirement account was cashed out at approximately $4,800. He sold the couple's home and gained a "few thousand dollars" from the sale. He and Allen testified that all of this money was put back into his business in the hopes of making it more profitable or used to pay taxes.

(4) the willfulness of defendant's failure to pay:

- the Brazos county community supervision officer testified that Quisenberry would send notes with his partial-payments apologizing for his tardiness and saying he would pay more in the future;

- he made 9 monthly payments in 1991, 4 monthly payments in 1992, 11 payments in 1993, 9 payments in 1994, 7 payments in 1995, 10 payments in 1996, 9 payments in 1997, 5 payments in 1998, and 9 payments in 1999; and

- his most frequent payment amount was $200; his lowest payment was $5; his highest was $500;

(5) any other special circumstances that may have affected defendant's ability to pay:

- Quisenberry testified that one reason his payments stopped was because of the income lost when his wife died;

- the trial court twice ordered restitution payments in amounts that the State agreed he could not pay; monthly payments were not specified under the court's orders until 1993;

- he owed restitution totaling $203,228.20 in five other counties;

- he made restitution in Hale, Midland, and Haskell counties by performing hauling services in addition to cash payments;

- during the probationary term, he occasionally helped with college tuition; [7] and

- one of his sons is a diabetic and when Sharon died he no longer had health insurance to help defray the costs of his insulin treatments; Quisenberry had to pay $400 a month for the treatments until his son graduated from college and obtained health insurance through his employer.

Our research has revealed no case that describes how a trial court or an appellate court should apply and weigh these factors. Nevertheless, the Legislature has determined that they "shall" be considered and are thus appropriate for our review of the trial judge's decision in this instance. In this inquiry, we ask: "Did the trial court abuse its discretion [8] in revoking community supervision for failure to pay restitution, considering the five factors listed in article 42.037(h)?"

The factors should be viewed on a case-by-case basis. No factor is necessary to justify revocation; no factor alone is sufficient to justify revocation. The first four must be considered together, along with such special circumstances as may be relevant. Addressing the first factor, the defendant's employment status,

---

7. On this issue, Quisenberry's accountant testified that "George might have helped [his son], $500 a semester towards his tuition." Quisenberry explained that he gave money to his sons for college expenses on an "emergency-basis." He said both his sons relied on student loan money and part-time jobs to go to school.

8. The statute is silent on the question of who has the burden of producing evidence on these factors. We believe that the standard of review under the statute is whether the trial court abused it discretion in revoking community supervision for failure to pay. TEX.CODE CRIM. PROC. ANN. art. 42.12 § 21(b) (Vernon Supp.2002) (The trial court, "after a hearing without a jury, may either continue, extend, modify, or revoke community supervision."). Thus, we review all the evidence to ascertain whether the decision is reasonably supported by the record. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994); *Flores v. State*, 871 S.W.2d 714, 718 (Tex.Crim.App.1993).

if a defendant is unemployed but has the ability to work, that factor weighs in favor of revocation. If the evidence shows that the defendant is deliberately underemployed, the second factor, "earning ability," will favor revocation; the amount and frequency of his earnings compared to the amount and frequency of court-ordered restitution payments should also be considered in connection with the second factor. If a defendant has financial resources separate and apart from employment and unreasonably fails to use them, or has the ability to borrow money but unreasonably fails to employ that option, then the third factor will weigh in favor of revocation when he fails to pay. If a defendant willfully fails to pay restitution while possessing the ability to pay, the fourth factor will weigh in favor of revocation. The final factor, other special circumstances, may weigh in favor of or against revocation, depending on what the evidence shows.

Here, Quisenberry has always been employed; he earned income to the extent of his ability in the line of work he had chosen and in which he was engaged at the time he was placed on community supervision; he had no other financial resources or borrowing ability; he has consistently recognized his obligation to pay restitution; finally, the evidence of special circumstances includes a medical problem with a child, the loss of his wife, and substantial obligations to make restitution payments in other counties. We conclude that an analysis of the record regarding the first four factors listed in article 42.037(h), along with the special circumstances shown, requires that we find that the trial court abused its discretion in revoking Quisenberry's community supervision for failure to pay restitution. TEX. CODE CRIM. PROC. ANN. art. 42.037(h).

## CONCLUSION

Having found that the trial court erred by revoking Quisenberry's community supervision, we reverse the order on each count and remand the cause for further proceedings consistent with this opinion.