In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00104-CR
______________________________


DIANA LYNN KEMP, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 276th Judicial District Court
Marion County, Texas
Trial Court No. F11450


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Diana Lynn Kemp appeals from the revocation of her community supervision. She was
convicted of aggravated assault May 9, 1995, by a jury. The jury assessed a ten-year sentence and
a $10,000.00 fine, but recommended Kemp be placed on community supervision. The trial court
suspended imposition of the sentence and placed Kemp on community supervision for ten years. 
The conditions of community supervision included a requirement to pay $191.50 in court costs, a
$10,000.00 fine, and $16,028.50 in restitution. Kemp was allowed to pay the total $26,220.00 over
the ten-year term at $218.50 per month, plus $40.00 per month in supervision fees.
            The State moved to revoke, alleging that Kemp had failed to report to her community
supervision officer (by mail) in thirty-five separate months and that she was in arrears on supervision
fees, payments on court costs, the fine, and restitution. At the hearing, the court found that the
allegations concerning her failure to report were not true and found that the allegations concerning
her failure to pay were true. The trial court then revoked her community supervision and sentenced
her to ten years' imprisonment.
            We note at this point that the written judgment of revocation does not accurately reflect the
court's pronouncement at the hearing—stating that the court found all allegations true. It is also
erroneous because it states Kemp pled true to the second allegation, which is incorrect. Where there
is a variation between the oral pronouncement of sentence and the written memorialization of that
sentence, the oral pronouncement of sentence controls. Thompson v. State, 108 S.W.3d 287, 290
(Tex. Crim. App. 2003); Coffey v. State, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998). We hereby
order the judgment reformed to accurately reflect the oral pronouncements of the court.
            We now turn to Kemp's contentions. We review an order revoking community supervision
under an abuse of discretion standard. Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App.
1984); Jackson v. State, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983). At a revocation hearing, the
State bears the burden of proving, by a preponderance of the evidence, that the defendant violated
the terms and conditions of his or her community supervision. Cobb v. State, 851 S.W.2d 871, 873
(Tex. Crim. App. 1993). Proof of any one of the alleged violations of the conditions of community
supervision is sufficient to support a revocation order. Moore v. State, 605 S.W.2d 924, 926 (Tex.
Crim. App. [Panel Op.] 1980); Sanchez v. State, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.]
1980). At a revocation hearing, the trial court is the sole judge of the credibility of the witnesses and
of the weight to be given their testimony; and, on appeal, the evidence must be viewed in the light
most favorable to the trial court's ruling. Cardona, 665 S.W.2d at 493; Garrett v. State, 619 S.W.2d
172, 174 (Tex. Crim. App. [Panel Op.] 1981). 
            The focus of this contention lies in Kemp's alleged inability to make payments. Inability to
make court-ordered payments is an affirmative defense to revocation of community supervision. 
Tex. Code Crim. Proc. Ann. art. 42.12, § 21(c) (Vernon Supp. 2004–2005); Stafford v. State, 63
S.W.3d 502, 508 (Tex. App.—Texarkana 2001, pet. ref'd).


 The affirmative defense must be proven
by a preponderance of the evidence. Stanfield v. State, 718 S.W.2d 734, 737 (Tex. Crim. App.
1986). The defendant has the burden of producing evidence and the ultimate burden of persuasion
on the issue of inability to pay. Id. The State still has the burden to prove the failure to pay was
intentional. Id. at 738. However, when the party has the ability to pay but does not, he or she leaves
a fact-finder with a strong inference that the failure is intentional. Id.; Maxey v. State, 49 S.W.3d
582, 584 (Tex. App.—Waco 2001, pet. ref'd).
            Nevertheless, when evidence that the person on community supervision is unable to pay fees,
court costs, fines, or restitution is not refuted by the State and the trial court revokes community
supervision, it is an abuse of discretion. Quisenberry v. State, 88 S.W.3d 745, 749 (Tex.
App.—Waco 2002, pet. ref'd).
            Kemp's payment history report from the community supervision offices of Marion County
shows she had paid a total of $3,763.50 to the State, which the State allocated to pay court fees,
dividing the remainder between community supervision fees and restitution. For substantial periods
of time, Kemp made no payments or paid amounts well below the amount set out in the judgment. 
            Kemp testified that, when placed on community supervision May 9, 1995, she was earning
between $4.10 and $4.35 per hour (approximately $700.00 per month). She moved to Houston and
received assistance from the Harris County Social Services, which helped her pay utilities. At that
point, however, she was making payments of $150.00 or more to the State. 
            Several months later, in 1995, Kemp suffered a stroke and developed a skin condition. As
a result, it was determined she was disabled, and in 1997 she began receiving supplemental security
income (SSI) benefits. Between mid-1996 and late 1997, she had no income, relying on friends and
family to provide her needs. Kemp's first SSI check covered the time between her claimed date of
disability in July 1996 and the date of approval, which was some eighteen months later, in December
1997. That first check was for a lump sum of between $6,000.00 and $7,000.00. She used the
entirety of that money to make a partial payment on back taxes on her father's home, which was
where she was living at the time and which was in danger of foreclosure by Harris County. She was
receiving approximately $500.00 per month in SSI payments.
            In 2003, Kemp moved in with her mother, who was also on Social Security, and Kemp's SSI
payments were accordingly lowered to $319.00 per month. She returned to Marion County at the
State's request to discuss her failures to pay, and at some point, her mother told the community
supervision officer by telephone that she would refinance the house to help make Kemp's payments. 
Instead, when the house was refinanced, Kemp's mother and sister split the proceeds and refused to
give Kemp any portion of the money. The house was in the names of her mother and sister, and the
evidence showed that Kemp had no right to any portion of the funds. 
            To summarize: for the first several months of her community supervision, Kemp was
employed as a home healthcare worker at minimum wage and made substantial monthly payments,
although never paying the full amount due in any given month. For the remainder of the first year,
she continued to make payments, although—as later acknowledged by the Social Security
system—she was disabled at the time. For eighteen months, Kemp lived off the largesse of her
family and friends. She then received a lump-sum check for the amount due for those months, which
she used as partial payment on a tax lien on the house in which she was living. Between December
1997 and June 2003, she was paid a disability payment of $500.00 per month by SSI. At some point
during that time, she moved into her own apartment and was required to pay her own bills and car
insurance. However, in 2003, she moved in with her mother (who had suffered a stroke and whose
husband had committed suicide), to provide home care for her, and Kemp's SSI payment was
reduced to $319.00 per month. There was no testimony about whether Kemp had any money in bank
accounts.
            There is no dispute concerning the amounts of money available to Kemp or when they were
available. The State did not rebut any portion of her testimony. Thus, the only question is whether
Kemp's situation constitutes an inability to pay.
            In its argument to the court, the State did not attempt to address Kemp's income situation,
but focused on the lump-sum payment she received from SSI as showing that she had at one point
had a substantial sum in her hands—but did not see fit to use any portion of it toward payment of
her own obligations.


 After receiving the lump-sum payment in December 1997, Kemp clearly had
the ability to pay the $218.50 per month installment payments. According to the records, she paid
a total of $390.00 from June 1997 through September 1999.
            The standard of review with regard to the affirmative defense of inability to pay is whether,
after examining all the evidence concerning the affirmative defense, a rational trier of fact could have
found that the defendant failed to prove his or her defense by a preponderance of the evidence. Hill
v. State, 719 S.W.2d 199, 201 (Tex. Crim. App. 1986); Jones v. State, 112 S.W.3d 266, 269 (Tex.
App.—Corpus Christi 2003, no pet.); Arterberry v. State, 800 S.W.2d 580, 581 (Tex. App.—Tyler
1990, no pet.). 
            The record shows that Kemp, for short times during the nine years, made payments of over
one-half of the monthly requirement and that she made a single payment or $1,000.00 shortly before
the motion to revoke was filed. Otherwise, she made no more than minimal payments toward any
of the court-ordered monetary conditions. Further, although she did receive a lump-sum payment
of between $6,000.00 and $7,000.00, she directed no portion of that amount toward her obligations. 
We recognize that Kemp had received no income for the previous eighteen months and that the
payment was to cover that time period. Had evidence been available to show she used that money
to repay loans required to support herself while waiting that year and a half for her disability check,
we would be confronted with a different situation. That, however, is not what is shown by this
record.
            We find that Kemp did not meet her burden to establish she was unable to pay. See Reyes
v. State, 752 S.W.2d 591, 592 (Tex. App.—Corpus Christi 1987, no pet.). Thus, the trial court did
not abuse its discretion by revoking her community supervision. We overrule her contention of
error.
            As reformed, the trial court's judgment is affirmed. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          December 6, 2004
Date Decided:             January 11, 2005

Do Not Publish



. But, confusingly, Appellant's name is
different in each of the three trial court judgments. In cause number 06-05-00251-CR--this
case--the judgment refers to Appellant as Marvin Omar Espinal Zelaya, a/k/a Marvin Omar Espinal,
and we refer to him as Espinal throughout this opinion. In cause number 06-05-00252-CR, the
judgment refers to Appellant as Marvin Omar Espinal Zelaya, a/k/a Zelaya Marvin-Omar Espinal
and we refer to him as Zelaya throughout that opinion. In cause number 06-05-00253-CR, the
judgment refers to Appellant as Marvin Omar Espinal Zelaya, and we refer to him as Zelaya
throughout that opinion.
2. This case was transferred to this Court by order of the Texas Supreme Court's docket
equalization program.
3. See our opinions in cause numbers 06-05-00252-CR and 06-05-00253-CR.
4. Portions of Espinal's statement, in which he admitted participating in at least the three
robberies for which he was on trial, were admitted into evidence during guilt/innocence. It appears
the excerpts read during punishment were excluded at guilt/innocence by agreement of the parties. 
5. Miranda v. Arizona, 384 U.S. 436, 473-74 (1966).
6. Badillo was fluent in Spanish and acted as translator in the interview. 
7. Failure to object in a timely and specific manner forfeits complaints about the admissibility
of evidence. Unless the right involved is an absolute systemic one or one requiring an affirmative
waiver, an objection must be presented to preserve error. See Saldano, 70 S.W.3d at 888; Marin v.
State, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993). 
8. When read his Miranda rights and presented a waiver-of-rights form to sign, Zervos signed
the form. When the officer said that he had been told Zervos wanted to speak with the officer,
Zervos said, "Nah, I just want to know what kind of trouble I'm in, that's all." Zervos, 15 S.W.3d at
154. Reviewing all of Zervos' comments (including those available on video tape), this Court held
that, while some of his comments may have been ambiguous, it was "clear that Zervos intended to
waive his rights and give the statement." Id.
9. See Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); Cates v. State, 102
S.W.3d 735, 738 (Tex. Crim. App. 2003) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979))
(standard of review for legal sufficiency). 
10. See Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004) (standard of proof
for analysis of factual sufficiency).
11. Even if we found Espinal had adequately briefed this issue, we refer again to the evidence
summarized above. The evidence, viewed in a neutral light, is not too weak to support the finding
of guilt beyond a reasonable doubt; nor is there evidence contrary to the verdict strong enough that
the beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d
654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App.
2004)).