Opinion issued October 15, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00519-CR

_____

**LASHUN DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1150018**

---

## O P I N I O N

In 2008, Lashun Davis pleaded guilty to theft, a third-degree felony. *See* TEX. PENAL CODE §§ 31.03(a), 31.03(e)(5). The trial court deferred adjudication and placed her on community supervision for ten years. In February 2018, the State filed a motion to adjudicate guilt based on her failure to pay supervision fees and

failure to pay restitution. The trial court granted the motion, adjudicated Davis guilty, revoked supervision, and sentenced her to five years' imprisonment.

We hold that the trial court abused its discretion in revoking Davis's probation for failure to pay fees and restitution. We vacate the trial court's judgment adjudicating Davis's guilt, revoking her community supervision, and sentencing her to confinement, and render judgment discharging her from supervision.

## Background

In 2008, Davis was indicted for stealing 550 cellular phones over the course of a year from her employer, Cricket Communications. In March 2008, Davis pleaded guilty without an agreed punishment recommendation. The court deferred adjudication and placed Davis on community supervision for ten years. The initial conditions of Davis's supervision required her to pay: a $20 monthly fee for supervision, a $209 fine at a rate of $5 per month, a $5 monthly laboratory fee during supervision, and restitution of $92,952.08 at a rate of $745.43 monthly plus an initial payment of $5,000. She was also required to submit to random drug testing and perform 160 hours of community service at a rate of 8 hours per month.

### A.  Procedural History

On March 4, 2010, the State filed a motion to adjudicate guilt based on Davis's failure to report to her probation officer from March 2009 through March

2010, failure to complete community service, and failure to pay fees or restitution. The motion was dismissed in June 2010, and the terms of Davis's supervision were amended, including increasing the restitution amount from $745.73 per month to $943 per month beginning August 2010. In 2012, the terms of supervision were amended again. The court waived delinquent laboratory and supervision fees, reduced the amount of community service hours, and ordered Davis to serve 45 days in Harris County jail beginning April 5, 2012.

On February 2, 2018, the State filed another motion to adjudicate guilt, which is at issue in this appeal. In the motion, the State alleged Davis violated her supervision conditions by failing to pay:

- The $20 monthly supervision fee, resulting in $940 in arrears as of January 2018

- The $5 monthly laboratory fee, accruing $230 in arrears as of January 2018

- $943 per month restitution, resulting in $76,528 in arrears as of January 2018.

**B.    Adjudication Hearing**

The hearing on the State's motion to adjudicate guilt took place on May 3, 2018. Davis pleaded true to the allegations. The State did not call any witnesses and rested after admitting one piece of evidence: the State's motion to adjudicate guilt. The trial court heard testimony from Davis, her probation officer, and her mother.

### 1.  Davis's Testimony

Davis testified that she was 38 years old, single, and had lived with her mother and stepfather for 20 years. She graduated from high school and attended college but did not graduate. She was fired from her job for the 2008 theft offense. Following her conviction, she worked at her aunt's daycare as a caregiver for $7.55 per hour from 2008 to 2011. From 2011 to 2015, she worked as a delivery dispatcher for $8 per hour. In 2015, she participated in the City of Houston Reentry Program, attending classes during the day, and applying to jobs through staffing agencies. She was hired temporarily at Lone Star Fasteners as a data entry clerk where she earned $10 per hour. At the time of the hearing, she had worked at the company for two years, and she had been promoted to purchasing agent, earning $39,000 a year. She had recently interviewed for a promotion that would include an increase in salary. She testified that she applied to numerous part-time jobs to supplement her income, had been interviewed, and was never hired.

Davis testified that she had been on probation for ten years, never tested positive for drugs, and completed the community service hours required for her probation. She testified that she was charged with driving with an invalid license in 2010. [1] She explained that her license was invalid because she could not afford full

---

[1]     The exact crime is not in the record.

insurance coverage. She said she had not been charged with any other criminal conduct or received any speeding tickets.

Davis testified about her medical conditions and medical expenses. In 2013, she was diagnosed with Graves' disease. The condition gave her a high heart rate and made her sensitive to heat. She had a goiter in her neck that blocked 30% of her trachea. During her probation, she had it surgically removed along with part of her thyroid. Though she applied for assistance from Harris County, she had to pay $1,000 out of pocket for the surgery. She also had an operation to remove a mass under her right arm and some breast tissue. At the time of the hearing, Davis remained under the care of a physician, requiring monthly laboratory work to check her thyroid levels and daily medications that cost between $100 and $120 monthly.

Davis also testified that she was in a car accident with a drunk driver in 2013. The other driver was uninsured, and at the time, she only had liability insurance because she could not afford uninsured, underinsured, or collision coverage.

Davis testified that she declined her mother's offer to pay restitution after the last revocation hearing because she felt the debt was her responsibility and her mother would have had to take a loan from her retirement account to pay it. If allowed to stay on probation, Davis planned to pay off the remainder of the

5

restitution by seeking part-time employment and accepting assistance from her father.

On cross-examination, the State asked Davis about her cellphone expenses and Davis responded that her bill was $100 in a previous month. The State asked if she knew that her probation cost county taxpayers. The State hypothesized that it would cost the taxpayers $36,000, based on a rate of $10 per day, to keep her on probation for ten years. Davis agreed that that was twice what she had paid back to Cricket Communications.

On redirect, Davis affirmed that she wanted to pay restitution and that she had been unable to pay it back. She explained that for the first seven to eight years of probation she did not have a job that paid well. She only recently obtained a job where she felt she could be in a financially secure place to make payments. She asked the court to allow her to remain on probation so that she had the opportunity to pay back money she owed.

### 2. Probation Officer's Testimony

Michelle Scott, Harris County Adult Probation Officer, testified that she had been Davis's probation officer for two years. They met regularly, and Davis never had any positive drug tests. She testified that Davis was ordered to pay a large amount monthly in restitution and was unable to make the payments. She had provided Davis with job listings to support her effort to find additional income.

According to Scott, Davis made payments throughout her supervision, with fewer than 12 months passing between payments. She confirmed that Davis had medical issues and that she was a good probationer who was making an effort to better herself.

### 3.    Vanessa Davis Alexander's Testimony

The court heard testimony from Davis's mother, Vanessa Davis Alexander. She testified that after Davis's last court hearing, she offered to help pay the restitution, but Davis declined. She agreed to help Davis should the court grant her continued probation.

The trial court found true the allegations that Davis failed to pay fees and restitution. The court granted the State's motion to adjudicate, revoked Davis's community supervision, and sentenced her to five years in the Texas Department of Criminal Justice. This appeal followed.

## Appellate Issues

Davis contends that the trial court abused its discretion when it revoked her community supervision for failure to pay supervision fees and failure to pay restitution. We agree.

Because we hold that the trial court abused its discretion in revoking community supervision based on each of the State's alleged violations, we do not reach Davis's constitutional arguments.

7

## Standard of Review

When reviewing an order revoking community supervision, the sole question before this court is whether the trial court abused its discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)). "The central issue to be determined in reviewing a trial court's exercise of discretion in a [community supervision] revocation is whether the defendant was afforded due process of law." *DeGay v. State*, 741 S.W.2d 445, 450 (Tex. Crim. App. 1987).

There are three limits to a trial court's discretion to revoke supervision: (1) the State must prove at least one violation of the terms and conditions of community supervision (2) an appellate court will review the trial court's decision for an abuse of discretion; and (3) federal due process requires that a trial court consider alternatives to imprisonment before incarcerating an indigent defendant who is unable to pay amounts due under community supervision. *Lombardo v. State*, 524 S.W.3d 808, 812 (Tex. App.—Houston [14th Dist.] 2017, no pet.)

The State has the burden to establish by a preponderance of the evidence that appellant committed a violation of the terms and conditions of community supervision. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). The standard is met when the greater weight of credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been

violated. *Rickels*, 202 S.W.3d at 764 (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). Only one sufficient ground is necessary to support a trial court's decision to revoke community supervision. *Smith v. State*, 268 S.W.3d 333, 342 (Tex. Crim. App. 2009); *see also Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) (stating proof of a single violation will support revocation). The trial court abuses its discretion by revoking community supervision if, as to every ground alleged, the State fails to meet its burden of proof. *Cardona*, 665 S.W.2d at 494.

## Failure to Pay Restitution

On appeal, Davis argues that the trial court abused its discretion when it granted the State's motion absent any evidence that her failure to pay was willful. The State responds that Davis had more than sufficient earnings to afford her court-ordered fees.[2]

### A. Applicable Law

The statute concerning revocation for failure to pay restitution states:

> If a defendant is placed on community supervision or is paroled or released on mandatory supervision, the court or the parole panel shall order the payment of restitution ordered under this article as a condition of community supervision, parole, or mandatory

---

[2] In its brief, the State relies on Davis's affidavit of indigency, filed August 2018. Because this document was not before the trial court at the May 2018 revocation hearing, we do not consider it in reaching our decision. *Whitehead v. State*, 130 S.W.3d 866, 873 (Tex. Crim. App. 2004) (stating an appellate court's review of the record is generally limited to the evidence before the trial court at the time of the trial court's ruling).

supervision. The court may revoke community supervision and the parole panel may revoke parole or mandatory supervision if the defendant fails to comply with the order. In determining whether to revoke community supervision, parole, or mandatory supervision, the court or parole panel **shall consider**:

(1)    the defendant's employment status;

(2)    the defendant's current and future earning ability;

(3)    the defendant's current and future financial resources;

(4)    the willfulness of the defendant's failure to pay;

(5)    any other special circumstances that may affect the defendant's ability to pay; **and**

(6)    the victim's financial resources or ability to pay expenses incurred by the victim as a result of the offense.

TEX. CODE CRIM. PROC. art. 42.037(h) (emphasis added). The trial court may revoke community supervision if the defendant fails to comply with the order of restitution and the court considers the six 42.037(h) elements. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012) (explaining 42.037(h) is a mandatory evidentiary provision). "[A]s long as a trial court considers the factors in its decision whether to revoke a community supervision, a court is not required to weigh the factors in any particular manner." *Id.* The 42.037(h) elements should be viewed on a case-by-case basis. *Quisenberry v. State*, 88 S.W.3d 745, 754 (Tex. App.—Waco 2002, pet. ref'd). No element is necessary to justify revocation; no element alone is sufficient to justify revocation. *Id.*

10

**B.** **Analysis**

Applying the article 42.037(h) elements to the facts of this case, we find:

*(1)The defendant's employment status:*

At the time of the hearing, Davis was employed as a purchasing agent. She had worked at the same company for two years. Previously, she had been employed at a daycare and as a dispatcher. She struggled to find additional part-time employment. She consistently maintained employment and sought additional income to be able to meet the obligation. *But cf. Quisenberry*, 88 S.W.3d at 754–55 (stating if a defendant is unemployed but has the ability to work the first element will favor revocation).

This element weighs against revocation.

*(2)The defendant's current and future earning ability*

Davis's education included a high school diploma and some college. Though she was employed throughout supervision, she earned barely above minimum wage. From 2008 to 2011 she earned $7.55 an hour and from 2011 to 2015 she earned $8 an hour. At the time of the hearing, she earned $39,000 per year and was eligible for a promotion. The evidence showed that Davis continued to pursue supplemental employment.

Davis showed initiative by taking advantage of the City of Houston Reentry Program. Through the program, she was hired temporarily by her employer, and

eventually she was offered full-time employment and promotions. The evidence showed that Davis was not deliberately underemployed and worked to increase her earning ability during probation. *See Quisenberry*, 88 S.W.3d at 755 ("If the evidence shows that the defendant is deliberately underemployed, the second factor, 'earning ability,' will favor revocation. . . .").

"[T]he amount and frequency of [the appellant's] earnings compared to the frequency of court-ordered restitution payments should be considered in connection with the second factor." *Id.* Davis was ordered to pay $92,952.08 in restitution. From 2008 to 2010, she was ordered to pay $745.73 monthly. Beginning August 2010, the rate increased to $943 monthly. She had paid approximately $16,423.40 in restitution during the ten years of supervision, and she was $76,528.68 in arrears as of January 30, 2018. Based on the hourly wages Davis testified to, she earned approximately $15,000 to $17,000 a year or between $1,250 and $1,415 a month in gross income before taxes from 2008 to 2015. Davis was ordered to pay more than $700 monthly from 2008 to 2010 and $943 monthly beginning in 2010. Thus, she was ordered to pay more than 50% of her gross monthly income, without accounting for necessary expenses, toward restitution alone.

In 2013, Davis suffered from health problems and was in a car accident. The evidence showed she had extra medical expenses, including paying for surgery,

ongoing medical care, and medications. At the time of the hearing, Davis remained under the care of a doctor for her condition and required daily medications at an extra expense. Despite medical problems, she continued to work.

The second element weighs against revocation. Davis was not deliberately underemployed, and her ability to comply with the monthly payments was limited by the fact that the frequency and amount of her restitution payments were a substantial amount of her monthly income.

### *(3) The defendant's current and future financial resources*

There is no evidence that Davis refused to use her available financial resources toward restitution. She testified that her credit rating prohibited her from obtaining a loan, and she had no inherited property that could have been used to pay the restitution. She worked to increase her earning capacity by participating in the reentry program. She was doing well at her job and had been interviewed for a promotion which would have increased her future salary.

The evidence showed that Davis's mother had offered to help pay the restitution by taking a loan against her retirement. *See Quisenberry*, 88 S.W.3d at 755 ("If a defendant . . . has the ability to borrow money but unreasonably fails to employ that option, then the third factor will weigh in favor of revocation when [the appellant] fails to pay."). But Davis's mother testified that Davis asked her not to assist because repaying was her own responsibility. While Davis had the ability

13

to borrow money, her mother did not have the money to give and would have taken out an additional loan on her behalf. In light of the circumstances, it was reasonable for Davis not borrow money from her mother. The evidence showed that Davis recognized her obligation to pay restitution when she instructed her mother not to take out a loan to pay it off. *See id.* (concluding that trial court abused its discretion in revoking based in part on the defendant who "constantly recognized his obligation to pay restitution").

Davis concedes that this element is either neutral or "only slightly supports revocation."

### (4) The willfulness of the defendant's failure to pay

The evidence shows that Davis did not willfully fail to pay. She diligently sought better employment. Despite meager earnings, she had paid more than $16,000 in restitution over ten years. As described above, her court-ordered payments were a substantial amount of her gross monthly income, without accounting for any deductions or necessary living expenses. While Davis had an opportunity to pay during her supervision, the evidence demonstrated that she had little ability to pay. *See Martinez v. State*, 563 S.W.3d 503, 516 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) (holding that evidence of a source of income, without more, does not show ability to pay restitution because while

14

defendant had opportunity to pay because he had a source of income, he may not have had the ability to pay because of bills and other expenses).

The court heard testimony that she had taken advantage of the city's reentry program, and this program increased her stability by giving her a path to full-time employment at a higher salary. The court also heard that Davis had been a good probationer, aside from financial responsibilities. She was remorseful and wanted to pay restitution.

This element weighs against revocation.

### (5) Any other special circumstances that may affect the defendant's ability to pay

The trial court heard testimony that in 2013, Davis had surgery, requiring $1,000 out of pocket costs. She suffered from Graves' disease, which impacted her physical health and required ongoing medical treatment monthly. In 2013, Davis was hit by an uninsured drunk driver. Due to low income, she did not have insurance against uninsured drivers. While there was no evidence of Davis's expenses from the wreck, it can be inferred that she suffered financially because she did not have insurance for the accident.

The State's only evidence to contradict Davis's lack of resources was testimony about her cellphone expenses. Davis testified that her bill was $100 per month on a particular occasion, but that the amount had changed. This element weighs against revocation.

15

*(6) The victim's financial resources or ability to pay expenses incurred by the victim as a result of the offense*

There was no evidence of this element. We agree with the Corpus Christi court that there must be "*some* evidence of each of the six factors enumerated in article 42.037(h) for the trial court to *consider*." *Carreon v. State*, 548 S.W.3d 71, 78 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) The court explained that this reading is further supported by the "use of the conjunctive 'and' between the fifth and sixth factors" which leads to the conclusion that there must be some evidence of each of the six factors. *Id.* (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (providing that we must focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment). "It would be absurd to think that the Texas Legislature provided that trial courts 'shall consider' factors on which they might be presented no evidence." *Id.*

On this record, the trial court abused its discretion in finding that the balance of the article 42.037(h) factors supported revocation because the record presented by the State was insufficient. *See Carreon*, 548 S.W.3d at 79–80 (holding evidence was legally insufficient where the State provided no evidence of the victim's financial resources). There was no evidence of the sixth element, and none of the remaining elements weighed strongly in favor of revocation. The trial court abused its discretion by revoking Davis's supervision for failure to pay restitution.

16

**Failure to Pay Fees**

In addition to challenging revocation based on failure to pay restitution, Davis challenges the court's order revoking her supervision based on failure to pay fees.

Texas Code of Criminal Procedure Article 42A.751(i) provides:

> In a revocation hearing at which it is alleged only that the defendant violated the conditions of community supervision by failing to pay community supervision fees or court costs or by failing to pay the costs of legal services as described by Article 42A.301(11), the state must prove by a preponderance of the evidence that the defendant was able to pay and did not pay as ordered by the judge.

TEX. CODE CRIM. PROC. art. 42A.751(i.) Davis alleges that the State failed to meet its burden to prove that she was able to pay the fees. By its language, the ability-to-pay statute applies only when a defendant's failure to pay fees or costs is the sole basis for revocation. *See Gipson v. State*, 428 S.W.3d 107, 112–113 (Tex. Crim. App. 2014) ("*Gipson II*") (Johnson, J., concurring) (reading section 21(c) to apply when the only violations alleged are failure to pay fees, not when the State also alleged appellant committed another crime in violation of supervision); *see also Barerra v. State*, No. 07-18-00098-CR, 2018 WL 4345313, at *2 (Tex. App.—Amarillo Sep. 11, 2018, no pet.) (mem. op., not designated for publication). Therefore, when there are multiple grounds for revocation, some of which are not based on ability to pay, the State need not prove the defendant's ability yet failure

17

to pay fees. *See, e.g., Barerra*, 2018 WL 4345313, at *2 (affirming revocation without evidence of ability to pay because the defendant pleaded true to other grounds that did not involve financial obligations); *Johnson v. State*, No. 07-19-0031-CR, 2019 WL 2872292, at *4 (Tex. App.—Amarillo July 3, 2019, no pet.) (mem. op., not designated for publication) (State alleged four violations, including non-monetary violations, so did not need to prove that failure to pay fees was willful); *Stowe v. State*, No. 13-18-00415-CR, 2019 WL 2622342, at *2 (Tex. App.—Corpus Christi-Edinburg June 27, 2019, no pet.) (mem. op., not designated for publication) (affirming revocation when defendant did not challenge all of the bases for revocation, some of which did not involve ability to pay); *Bush v. State*, No. 09-18-00414-CR, 2019 WL 2607592, at *2 (Tex. App.—Beaumont June 26, 2019, no pet.) (mem. op., not designated for publication) (affirming because ability to pay only applies when it is the sole basis for revocation and defendant pleaded true to other non-financial reasons for revocation).

Usually, a plea of true to any one of the alleged violations is sufficient to support a trial court's revocation order. *Rusk v. State*, 440 S.W.3d 694, 703 (Tex. App.—Texarkana 2013, no pet.); *see also Moore v. State*, 11 S.W.3d 495, 498 n.1. (Tex. App.—Houston [14th Dist.] 2000, no pet.) But this case presents a circumstance in which the plea of "true" is not sufficient to waive all requirements that evidence be presented. *See id.* Here, where all of the alleged violations were

18

based on financial obligations and we have held that the trial court abused its discretion in revoking on the only other allegation, we cannot affirm the revocation for failure to pay supervision fees when the only evidence to support it is Davis's plea of true. *See Rusk*, 440 S.W.3d at 703. ("A defendant violates his community supervision by failing to pay fees regardless of whether the failure to pay fees is willful. The Texas ability-to-pay statute, though, only permits imprisonment when the failure to pay fees was willful."). As in *Rusk*, Davis's plea of true to failure to pay fees was only an admission that she did not pay the fees as ordered. *Id.* She did not admit that she had done so willfully. *Id.* And no evidence in the record demonstrates willfulness.

The State did not call witnesses or put on evidence related to Davis's ability to pay, and the evidence Davis presented showed that failure to pay both restitution and fees was based on inability to do so rather than willful disregard of the obligation. In these particular circumstances, we cannot affirm revocation based on failure to pay fees. The trial court abused its discretion by revoking supervision on this ground.

**Due Process Challenge**

Finally, Davis asserts that the trial court incarcerated her for failure to pay supervision fees and restitution in violation of the state and federal constitutions because the trial court failed to consider alternatives to imprisonment.

Because we have held that the trial court abused its discretion by revoking community supervision based on each of the State's allegations, we need not reach Davis's constitutional claim. *See* TEX. R. APP. P. 47.1.

## Conclusion

The judgment revoking Davis's community supervision, adjudicating her guilty, and sentencing her to confinement is vacated. Because Davis's term of community supervision has expired, we render judgment discharging Davis from community supervision.

Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Publish.   TEX. R. APP. P. 47.2(b).