

**NUMBER 13-24-00147-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**DONDRE CARTER,**                                                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                              **Appellee.**

---

**ON APPEAL FROM THE 24TH DISTRICT COURT
OF DEWITT COUNTY, TEXAS**

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Tijerina and Peña
Memorandum Opinion by Justice Peña**

Appellant Dondre Carter appeals the trial court's order revoking his community supervision; adjudicating him guilty of aggravated assault by threat with a deadly weapon, a second-degree felony; finding an enhancement paragraph true, thereby elevating the sentence to that of a first-degree felony; and sentencing him to forty years' imprisonment.

*See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), 12.32(a), 12.42(b). By one issue, Carter contends that "[t]he sentence in this case amounts to cruel and unusual punishment when compared to the severity of the underlying offense and technical probation violations." We affirm as modified.

## I. BACKGROUND

In a one-count indictment, Carter was charged with aggravated assault by threat with a deadly weapon. *See id*. § 22.02(a)(2). An enhancement paragraph further alleged that Carter had been previously finally convicted of the felony offenses of aggravated assault on a family member with a deadly weapon and abandoning or endangering a child. *See id*. §§ 22.02(b)(1), 22.041. As part of a plea agreement, Carter pleaded guilty as charged in the indictment and was placed on deferred-adjudication community supervision for a period of seven years. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.101.

Less than four months later, the State filed a motion to revoke Carter's community supervision and adjudicate him guilty. The revocation motion alleged that Carter violated his community-supervision conditions by: (1) committing the offense of aggravated robbery; (2) failing to abide by his court-ordered curfew; (3) failing to satisfactorily complete his community service restitution hours as directed; (4) failing to pay court-ordered monthly supervisory fees; and (5) failing to pay court-ordered monthly court costs.

At a contested revocation hearing, evidence was adduced that on November 3, 2022, Carter had been at a motel in Cuero, Texas with an acquaintance, Stephanie Rios, when two armed men in ski masks entered Rios's room, forced her to lay face down on the bed, and made her give them her key to a safe located in the room. The men left after

2

finding nothing in the safe and rummaging through the room. Rios stated that after the robbery she went to a gas station where she saw Carter with Maison Rickman and Deshawn Winters, whom she believed to be the ones who had robbed her based on their clothing. She further stated that she believed that Carter was involved in the robbery because the masked men were making hand gestures toward him during the robbery, which she interpreted as them asking Carter where in the room to search. After calling dispatch to report the robbery, Bobby Banda of the Cuero Police Department conducted a felony traffic stop, which led to the arrests of Carter and Winters. Rickman was separately arrested. Based on surveillance footage, law enforcement identified Rickman and Winters as the individuals who had entered Rios's motel room.

In a post-arrest video interview admitted into evidence, Carter admitted to being with Rickman and Winters prior to the robbery, and that they had dropped Carter off at Rios's motel room. Carter confirmed Rios's account of the robbery, including the fact that both men were holding guns. According to Carter, he was the "middleman" for a drug deal in which Rios was to sell methamphetamine to Rickman and Winters. After Rios called off the drug deal, Carter was dropped off at her motel room. In his interview, Carter opined that Rickman and Winters committed the robbery because they were upset that Rios had called off the deal. Carter denied any involvement in the robbery. The State also admitted into evidence the underlying indictments and judgments in Carter's two prior felony cases.

The trial court found all the allegations in the motion to adjudicate to be true and found that the State had proven the commission of aggravated robbery by a preponderance of the evidence. The trial court further found the enhancement paragraph to be true. After noting that "every crime that [Carter] has committed has been against a

3

person, and [he is] putting people in fear and danger, harming, threatening, and it seems to be escalating," the trial court sentenced him to forty years' imprisonment. Defense counsel objected that the sentence was unnecessary and violated the Eighth Amendment. The trial court overruled the objection. This appeal followed.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

The Eighth Amendment—made applicable to the states through the Fourteenth Amendment—prohibits the imposition of cruel and unusual punishments, which includes extreme sentences that are grossly disproportionate to the crime. *Graham v. Florida*, 560 U.S. 48, 58–60 (2010); *see* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *id.* amend. XIV. A trial court's discretion to assess punishment within the statutory range is essentially unfettered. *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (describing the "task of setting a particular length of confinement within the prescribed range of punishment [as] essentially a 'normative' judgment"). Generally, "punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *see Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd) (same).

"A narrow exception to the general rule exists: 'an individual's sentence may constitute cruel and unusual punishment, despite falling within the statutory range, if it is grossly disproportionate to the offense.'" *Trevino v. State*, 676 S.W.3d 726, 729 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.) (quoting *Alvarez v. State*, 525 S.W.3d 890, 892 (Tex. App.—Eastland 2017, pet. ref'd)). "An allegation of excessive or

4

disproportionate punishment is a legal claim 'embodied in the Constitution's ban on cruel and unusual punishment' and based on a 'narrow principle that does not require strict proportionality between the crime and the sentence.'" *Id.* (quoting *Simpson*, 488 S.W.3d at 322–24). A successful challenge to proportionality is exceedingly rare and requires a finding of "gross disproportionality." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). In the revocation context, we must evaluate the proportionality of the sentence to the original offense, not to the violations of the terms of community supervision. *See Sullivan v. State*, 975 S.W.2d 755, 756 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.); *Hammer v. State*, 461 S.W.3d 301, 304 (Tex. App.—Fort Worth 2015, no pet.) ("In resolving an Eighth Amendment disproportionality complaint, we first compare the gravity of the offense to the severity of the sentence. We evaluate the original offense, not community supervision violations, in making this comparison."). Where a sentence is imposed under a recidivist statute, the "sentence is imposed to reflect the seriousness of [a defendant's] most recent offense, not as it stands alone, but in light of prior offenses." *Winchester v. State*, 246 S.W.3d 386, 390 (Tex. App.—Amarillo 2008, pet. ref'd) (citing *Rummel v. Estelle*, 445 U.S. 263, 276 (1980) (holding that a life sentence under Texas's recidivist statue was not cruel and unusual)).

"In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Simpson*, 488 S.W.3d at 323. "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.* "Only twice has the Supreme

Court held that a non-capital sentence imposed on an adult was constitutionally disproportionate." *Id.* (first citing *Solem v. Helm*, 463 U.S. 277 (1983) (holding that life imprisonment without parole was a grossly disproportionate sentence for the crime of uttering a no-account check for $100); and then citing *Weems v. United States*, 217 U.S. 349 (1910) (holding that fifteen years in a prison camp was grossly disproportionate to the crime of falsifying a public record)). When reviewing a disproportionate-sentencing claim, we should generally try to "give full effect to the State's choice of . . . legitimate penological goal[s]" and "accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions." *Ewing v. California*, 538 U.S. 11, 29 (2003).

### III.  DISCUSSION

Carter does not challenge the trial court's determination that he violated the terms of his community supervision by failing to abide by his court-ordered curfew; failing to satisfactorily complete his community service restitution hours as directed; failing to pay court-ordered monthly supervisory fees; and failing to pay court-ordered monthly court costs. Rather, Carter argues that because the State failed to prove that he committed the offense of aggravated robbery beyond a reasonable doubt, the resulting sentence was disproportionate compared to the conceited technical violations. Carter argues, "[i]t appears that the true impetus behind [Carter]'s 40 year sentence was this uncharged alleged law violation."[1]

Carter was adjudicated guilty of aggravated assault by threat with a deadly

---

[1] Carter does not separately argue that the trial court was presented with legally insufficient evidence to support revocation on the basis of the aggravated robbery. *See Carreon v. State*, 548 S.W.3d 71, 77 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.).

weapon, a second-degree felony which, due to the enhancement finding, was punishable as a first-degree felony—i.e., by imprisonment for life or for any term not more than 99 years or less than 5 years. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), 12.32(a), 12.42(b). Carter's forty-year sentence was well within statutory limits and is presumptively not excessive, cruel, or unusual. *See Simpson*, 488 S.W.3d at 323; *Trevino*, 174 S.W.3d at 928.

Carter's claim consequently survives only if his sentence was "grossly disproportionate" to the crime. *See Trevino*, 676 S.W.3d at 729; *Simpson*, 488 S.W.3d at 323. "To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, [we] must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham*, 560 U.S. at 60). Contrary to Carter's suggestion, we must evaluate his disproportionate-sentencing claim by comparing his sentence with the underlying offense for which he was adjudicated guilty, not the violations that the trial court found to be true, and which served as the basis of his revocation and adjudication of guilt. *See Sullivan*, 975 S.W.2d at 756; *Hammer*, 461 S.W.3d at 304.

Carter was adjudicated guilty of aggravated assault by threat with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). According to the indictment, Carter "intentionally and knowingly threaten[ed] [an individual] with imminent bodily injury by pointing a firearm at [the individual], and [Carter] did then and there use or exhibit a deadly weapon, to-wit: said firearm, during the commission of the assault." A "deadly weapon" includes "a firearm or anything manifestly designed, made, or adapted for the purpose of

7

inflicting death or serious bodily injury." *Id*. § 1.07(a)(17). Standing alone, this offense is a second-degree felony, *see id*. § 22.02(b), and is punishable "for any term not more than 20 years or less than 2 years." *Id*. § 12.33. As part of this guilty plea, Carter signed a judicial confession in which he admitted the truth of this allegation.

Carter's sentence was enhanced to a first-degree felony because he had been previously finally convicted of aggravated assault on a family member with a deadly weapon and abandoning or endangering a child. *See id*. §§ 22.02(b)(1), 22.041, 12.42(b); *Winchester*, 246 S.W.3d at 390 (noting that under a recidivist statute we must analyze a disproportionate-sentencing claim by comparing the sentence with the "most recent offense, not as it stands alone, but in light of prior offenses"). One underlying indictment alleged that Carter "intentionally and knowingly use[d] a deadly weapon, to-wit: a firearm, and did then and there intentionally and knowingly threaten [B.R.] with imminent bodily injury by the use of said weapon," and "said [B.R.] was a member of the said . . . Carter's family and household." *See id*. § 22.02(b)(1). The second underlying indictment alleged that Carter "intentionally, and knowingly engage[d] in conduct by an act that placed [M.V.], a child younger than 15 years, in imminent danger of death, bodily injury and physical and mental impairment, to-wit: the said [Carter] pointed a firearm in the direction of said [M.V.] while threatening [B.R.] with said firearm." *See id*. § 22.041(b). The trial court found by a preponderance of the evidence that Carter committed the aggravated robbery of Rios, and by his own admission, Carter was actively involved in facilitating drug transactions involving methamphetamine. *See Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993) ("The burden of proof at a probation revocation hearing is by a preponderance of the evidence."). Before imposing its sentence, the trial court noted that

8

"every crime that [Carter] has committed has been against a person, and [he is] putting people in fear and danger, harming, threatening, and it seems to be escalating."

Upon this record, we cannot say that Carter's forty-year sentence gives rise to an inference of gross disproportionality. *See Simpson*, 488 S.W.3d at 323; *Reyes v. State*, 557 S.W.3d 624, 635 (Tex. App.—El Paso 2017, pet. ref'd) (concluding that a forty-year sentence for first-degree felony aggravated assault on a family member with a deadly weapon by a repeat felony offender was not grossly disproportionate); *see also Guillory v. State*, 652 S.W.3d 923, 930–31 (Tex. App.—Eastland 2022, pet. ref'd) (mem. op., not designated for publication) (concluding that the maximum twenty-year sentence for second-degree felony aggravated assault imposed after revocation of appellant's community supervision and adjudication of guilt was not grossly disproportionate); *Camacho v. State*, No. 02-23-00184-CR, 2024 WL 123493, at *3 (Tex. App.—Fort Worth Jan. 11, 2024, no pet.) (mem. op., not designated for publication) (concluding that the maximum twenty-year sentence for second-degree felony aggravated assault with a deadly weapon imposed after revocation of appellant's community supervision and adjudication of guilt was not grossly disproportionate).

Even if we were to assume a threshold inference of disproportionality, Carter presented no evidence in the trial court, and presents no argument on appeal, "compar[ing] [his] sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Simpson*, 488 S.W.3d at 323. Absent this comparative analysis, we are unable to conclude that the sentences are grossly disproportionate. *See id.*; *see also Esquivel v. State*, No. 13-21-00179-CR, 2022 WL 17492274, at *2 (Tex. App.—Corpus Christi–

9

Edinburg Dec. 8, 2022, pet. ref'd) (mem. op., not designated for publication) (rejecting Eighth Amendment challenge where appellant offered no comparative evidence of sentences received by other offenders); *Isassi v. State*, No. 13-22-00384-CR, 2023 WL 3881127, at *2 (Tex. App.—Corpus Christi–Edinburg June 8, 2023, pet. ref'd) (mem. op., not designated for publication) (same).

We overrule Carter's sole issue.

## IV.    REFORMATION OF JUDGMENT

An intermediate appellate court may reform a trial court's judgment to make the record speak the truth when it has the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b) (authorizing appellate courts to modify the judgment and affirm as modified); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) ("[A]n appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth."). The judgment of conviction, under the section "Statute for Offense," erroneously states that Carter was convicted under sections "22.02 & 12.45 Penal Code." *See* TEX. PENAL CODE ANN. § 12.45 (permitting a defendant to admit guilt to one or more unadjudicated offenses with the consent of the attorney for the State for the trial court to consider when determining sentence). We modify the trial court's judgment to instead list the following under "Statute for Offense:" "22.02 & 12.42 Penal Code." *See id.* § 12.42 (permitting enhanced punishment for repeat felony offenders).

## V.     CONCLUSION

We affirm the trial court's judgment as modified. *See* TEX. R. APP. P. 43.2(b).

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of July, 2024.

11