

# NUMBER 13-24-00341-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RUPERT DE DIOS CANIZALES
A/K/A RUPERT DIDIOS CANIZALES,                                    Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

## ON APPEAL FROM THE 214TH DISTRICT COURT
## OF NUECES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Peña**

Appellant Rupert De Dios Canizales a/k/a Rupert Didios Canizales appeals an

order adjudicating him guilty of aggravated assault and unlawful possession of a firearm

by a felon. *See* TEX. PENAL CODE ANN. §§ 22.02(a)(2), 46.04(e). After a contested adjudication hearing, the trial court sentenced Canizales to five years' imprisonment. By two issues, Canizales argues that there was insufficient evidence to sustain the judgment adjudicating him guilty. We affirm as modified.

## I. BACKGROUND

On February 26, 2021, Canizales pleaded guilty to aggravated assault with a deadly weapon and unlawful possession of a firearm by a felon and was placed on deferred-adjudication community supervision for a period of ten years. *See* TEX. CODE CRIM. PRO. ANN. art. 42A.101. The State later filed an amended motion to revoke Canizales's community supervision and to adjudicate his guilt on April 16, 2024. The operative motion to revoke alleged that Canizales violated the conditions of his community supervision by committing the following offenses: criminal mischief on May 26, 2023 (condition 1(A)); criminal trespass on June 2, 2023 (condition 1(B)); terroristic threat involving family violence on June 3, 2023 (condition 1(C)); terroristic threat causing fear of imminent serious bodily injury on June 15, 2023 (condition 1(D)); and assault causing bodily injury on June 16, 2023 (condition 1(E)).

On June 20, 2024, the trial court held a contested adjudication hearing. The State abandoned alleged violations of conditions 1(C) and 1(E), and proceeded on the remaining violations, to which Canizales pleaded not true. The evidence adduced at the hearing shows that Adriana Ortiz was the owner of certain commercial real estate properties located in Corpus Christi, Texas. She entered a commercial lease with Samantha Hurtado, who owned a home remodeling company, for a warehouse located on Airport Road. Ortiz explained that this warehouse had a shower upstairs which had

2

previously been used for oil-field workers to wash off, like many other warehouses she managed, but that the property had never been zoned or intended to be used for residential purposes. Hurtado, with Ortiz's permission, then subleased the property to two businesses: a business owned by Marcus and Ronnie Garcia, and one owned by Eduardo Miranda.

In May of 2023, Ortiz moved to terminate her lease with Hurtado and evict her "[b]ecause she owed me over about $90,000 of monies for non-payment of property tax for the previous year, that would have been . . . 2022." Ortiz also told the Garcias and Miranda to vacate, to which they agreed. Shortly after they began moving out of the warehouse, on May 24, 2023, Canizales approached Ortiz in her office and explained to her that he had an agreement with his unidentified "brother" that he would be allowed to live upstairs in the warehouse in exchange for work. Ortiz testified that she informed Canizales that nobody had permission to live there, and that she later tried to contact Hurtado directly about this issue, to no avail. Two days later, Ortiz hired a locksmith to change the locks in the warehouse, at which point Canizales threatened the locksmith, and law enforcement was called. Canizales also called his sister, who arrived at the warehouse and got into a physical altercation with Ortiz. Instead of forcibly removing Canizales from the property, law enforcement convinced Ortiz to institute formal eviction proceedings against Canizales because "he has three days."

Omar Garcia, a worker from across the street from where Canizales was staying, testified that on June 14, 2023, Canizales approached him and asked for a phone. Omar refused, and closed a nearby gate to prevent Canizales from entering the property. Canizales later returned "with a notebook and a knife." Canizales scratched the knife

3

along the fence and said he was going to use the knife to kill him. The next day, Canizales returned, and said "he had a gun and he was going to come back." Garcia testified that Canizales "threatened to kill me." Omar then called law enforcement and Canizales was arrested shortly thereafter.

At the close of evidence, the trial court found the violation of condition 1(A) to be not true but found the violations of conditions 1(B) and 1(D) to be true. The trial court sentenced Canizales to five years' imprisonment. This appeal followed.

## II.   STANDARD OF REVIEW AND APPLICABLE LAW

"We review a trial court's order revoking community supervision for an abuse of discretion." *Carreon v. State*, 548 S.W.3d 71, 77 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (citing *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013)). "In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated a condition of community supervision as alleged in the motion to revoke." *Martinez v. State*, 563 S.W.3d 503, 510 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (citing *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993) (en banc)). "In making this determination, we examine the evidence in the light most favorable to the trial court's findings to determine whether it could make the findings that were returned." *Id*. (citing *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.)). A single violation will support the trial court's decision to revoke community supervision. *Cazarez v. State*, 606 S.W.3d 549, 560 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009)).

## III.   DISCUSSION

Canizales argues that the evidence was insufficient as to the criminal trespass

4

violation because there was no evidence that he had proper notice that entry was forbidden. *See* TEX. PENAL CODE ANN. § 30.05(a) (providing that a person commits criminal trespass where he or she "enters or remains on or in the property of another, . . . without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so"). We disagree. Ortiz testified that she orally informed Canizales on May 24, 2023, that he was not allowed to stay in the warehouse owned by her. Two days later, he was found on the property.

Contrary to Canizales's position, simply because Ortiz later availed herself of the eviction process does not mean that her oral notice on May 24, 2023, was somehow ineffective. The Texas Penal Code explicitly provides that "notice" includes oral or written communication by the owner or someone authorized to act on the owner's behalf. *See id.* § 30.05(b)(2)(A). Canizales offers no case law in support of her argument that, under these circumstances, Ortiz's oral notice was ineffective, and we have found none. *See* TEX. R. APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) ("An appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." (cleaned up)); *Briceno v. State*, 675 S.W.3d 87, 96 (Tex. App.—Waco 2023, no pet.) (finding waiver where appellant "inadequately briefed" an issue).

Furthermore, eviction proceedings only pertain to landlord-tenant relations. *See generally* TEX. PROP. CODE ANN. § 24.002 (setting out elements for forcible entry and detainer, each of which refers to a "tenant"). Here, the evidence established that the warehouse had only been used for commercial purposes, and that nobody had ever been allowed to live there. According to the Texas Property Code, a "tenant" of residential real

5

property is, in relevant part, "a person who is authorized by a lease to occupy a *dwelling* to the exclusion of others." *Id*. § 92.001(6) (emphasis added). Accordingly, Canizales's reliance on eviction proceedings is unavailing. *See id*. § 92.001(1) (defining a "dwelling" as "one or more rooms rented for use as *a permanent residence* under a single lease to one or more tenants." (emphasis added); *see also Lopez v. State*, No. 10-23-00260-CR, 2024 WL 3717454, at *3 (Tex. App.—Waco Aug. 8, 2024, no pet.) ("The evidence was sufficient for the jury to conclude that [a]ppellant did not have a right to access the property as a tenant or otherwise.").

Having concluded that the evidence was sufficient, by a preponderance standard, to show Canizales committed criminal trespass, we need not address his second issue regarding the terroristic threat allegation. *See Cazarez*, 606 S.W.3d at 560. For all the above reasons, we overrule Canizales's two issues.

## IV.    MODIFICATION

An intermediate appellate court may reform a trial court's judgment to make the record speak the truth when it has the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b) (authorizing appellate courts to modify the judgment and affirm as modified); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) ("[A]n appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth."). The State acknowledges that the judgment adjudicating guilt incorrectly reflects that Canizales pleaded true to some violations. Accordingly, we modify the trial court's judgment to reflect that Canizales pleaded "not true" to violations of conditions 1(A), 1(B), and 1(D). The judgment should also reflect that the trial court found condition 1(A) to be "not true."

6

## V.    CONCLUSION

We affirm the judgment of the trial court as modified.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
14th day of August, 2025.